## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COLLEEN POREMSKI,                          :
                                           :
      **Plaintiff,**                           :
                                           :
      v.                                  :  **Case No.:**   22-1512
                                           :
**REGIONAL INDUSTRIAL**                    :
**DEVELOPMENT CORPORATION OF**             :
**SOUTHWESTERN PENNSYLVANIA,**             :  **COMPLAINT IN CIVIL ACTION**
                                           :
      **Defendant.**                          :


Filed on Behalf of Plaintiff:
Colleen Poremski

Counsel of Record for this Party:

**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:    (412) 545-3015
Fax No.:     (412) 540-3399
E-mail:      jward@jpward.com

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| COLLEEN POREMSKI, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | **Case No.:** | 22-1512 |
| | : | | |
| REGIONAL INDUSTRIAL | : | | |
| DEVELOPMENT CORPORATION OF | : | | |
| SOUTHWESTERN PENNSYLVANIA, | : | | |
| | : | | |
| Defendant. | : | | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Colleen Poremski, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Regional Industrial Development Corporation of Southwestern Pennsylvania, of which the following is a statement:

## PARTIES

1.     Plaintiff, Colleen Poremski (hereinafter "Ms. Poremski"), is an adult individual who currently resides at 483 Cherry Court, Pittsburgh, PA 15237.

2.     Defendant, Regional Industrial Development Corporation of Southwestern Pennsylvania (hereinafter "RIDC"), is a corporation with its headquarters located at 611 William Penn Place, Suite 600, Pittsburgh, Pennsylvania 15219.

## NATURE OF THE ACTION

3.     This action arises under the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*., the Pennsylvania Human Relations Act 43 P.S. §§ 951-963 ("PHRA")

and Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), incorporating by reference the Equal Pay Act 29 U.S.C.A. § 206 ("EPA").

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Ms. Poremski's claims pursuant to 28 U.S.C. § 1331.

5.     Ms. Poremski is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6.     Ms. Poremski filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations on or about April 25, 2022, under case number 533-2022-01598.

7.     On July 29, 2022, Ms. Poremski was issued a Notice of Right to Sue. The Complaint now timely follows.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8.     In 1981, Ms. Poremski initiated employment with RIDC. Her most recent position was Director of Administration and Assistant Secretary (an officer position).

9.     Ms. Poremski was discriminated against because of her sex in 2003 when President Bob Stephenson ("Mr. Stephenson") was hired.

10.    On Mr. Stephenson's first day of work, he told Ms. Poremski to "have a man sign that document" because "a man's signature carries more weight."

11.    Mr. Stephenson said that he missed the "good old days when women made coffee."

12.     Ms. Poremski and the other women in the office all felt uncomfortable with Mr. Stephenson's presence.

13.     Ms. Poremski had to seek mental health therapy because of the misogyny she was subjected to by Mr. Stephenson.

14.     Mr. Stephenson's behavior continued with no recourse.

15.     In 2008 or 2009 Mr. Stephenson left RIDC and Don Smith ("Mr. Smith") was hired as president.

16.     In 2016 or 2017 Mr. Smith removed Ms. Poremski from the management team for no reason.

17.     Around this same time, a handbook policy at RIDC relating to carrying over PTO time was put into effect. This policy on affected Ms. Poremski and none of the other male managers or men on the management team.

18.     Between 2016 and 2018 Ms. Poremski returned to mental health therapy because of the sex discrimination she was subjected to at work everyday from Mr. Smith.

19.     Ms. Poremski began having panic attacks and there were constant rumors that she was going to be fired.

20.     A colleague told Ms. Poremski around this time that Mr. Smith had gone to the executive committee once and said, "We're looking at Colleen [for termination] next because we don't know what she does here."

21.     Mr. Smith had never asked Ms. Poremski about her duties and habits at work despite a forty-year career with RIDC and a spotless record.

22.     In December 2018, RIDC moved to a new location.

4

23. Ms. Poremski had always had a private office due to her tenure with RIDC and senior-level position. A private office is helpful for her to review confidential documents related to her position.

24. When the office moved, she was in a cubicle with others while every man on the management team had a private office.

25. Her cubicle did not have a window while a male who was hired after the move was given a cubicle next to the window.

26. In 2018 RIDC hired Jason Hobbes ("Mr. Hobbes") as their counsel. She was required to sit outside of his office, and to a passerby, she appeared to be his secretary.

27. Ms. Poremski was asked by colleagues regularly if she had been demoted because of the seating arrangement at the office.

28. Ms. Poremski asked Mr. Smith about having a private office on several occasions and he never had a response for why she was in a cubicle despite there being numerous different offices available since 2018.

29. Ms. Poremski also does not get paid parking while male officers and managers do receive paid parking by RIDC.

30. From the outset of Mr. Smith's employment, he had invited all male officers to most of the executive committee meetings.

31. Ms. Poremski, despite being the board secretary, was never invited to these meetings.

32. In September 2021 Ms. Poremski was told that she could attend the board meeting via Zoom. A new man, "Bill", who had just been hired as treasurer, was present at the meeting in person.

33.    In December 2021 Ms. Poremski was not invited to the board meeting at all.

34.    Ms. Poremski had been attending board meetings for forty years and had never not been invited.

35.    Ms. Poremski held the title of assistant board secretary from 1993 through 1994, corporate secretary from 1994-2018 and assist secretary from 2018 until 2022.

36.    Ms. Poremski was the only female officer and the only officer not invited to attend the board meetings.

37.    Ms. Poremski's tasks as part of the board are to write the board's resolutions, creating the agenda and noting meeting minutes.

38.    Ms. Poremski asked Mr. Smith why she was not invited to the December 2021 meeting and Mr. Smith told her that it was due to COVID-19 protocols.  Although, Mr. Smith immediately invited her to a post-meeting cocktail party.  Which led Ms. Poremski to believe that COVID-19 protocols should not have prevented her from being included in the meeting.

39.    Based on Ms. Poremski's knowledge and belief, Mr. Smith only invited her for cocktails because she had asked him why she was not invited to the meeting.

40.    On December 10, 2021, Ms. Poremski emailed Beth Hoffman ("Ms. Hoffman") in human resources for RIDC to report the sex discrimination she was continuously subjected to by Mr. Smith.

41.    Around 2021 Ms. Poremski complained to Dennis Joyce ("Mr. Joyce") about the discrimination she was facing, and he told her that "Smith has a problem working with women."

42.    Ms. Poremski was not invited to the February 2022 board meeting and asked Mr. Smith why was not being invited anymore.

43.    Mr. Smith said that she could attend "if it was that important for her."

6

44.     Ms. Poremski felt, as an officer, it was important that she attend.

45.     Ms. Poremski has seen the 990 tax filings for RIDC including the bonuses that male officers and male managers received.

46.     The bonuses for men typically range from $10,000.00 to $25,000.00.

47.     The largest bonus Ms. Poremski ever received was $3,000.00 in 2021 despite the only difference between she and the other managers is that they are men.

48.     Ms. Poremski spent time socially with Marian Kurta ("Ms. Kurta") and Ms. Hoffman.   The three discussed work matters regularly during virtual coffee meetings. Ms. Poremski and Ms. Kurta would constantly discuss the misogyny and sex discrimination in the office, but Ms. Hoffman would be silent.

49.     Ms. Hoffman was well-aware of the sex discrimination occurring daily at RIDC and chose not to report it or take any action despite her capacity as human resources for RIDC.

50.     A newly hired female employee in 2022 told Ms. Poremski "Men are treated so much better than women here."

51.     Sara Davis Buss ("Ms. Buss"), the board vice chair, resigned in December 2021 and at that same time Mr. Smith decided to cease inviting Ms. Poremski to board meetings, making the meetings all male staff.

52.     Ms. Poremski was offered a bonus with the caveat that she had to train her replacement, must give six months' notice if she chooses to separate from the company and must sign a release of all claims against RIDC.

53.     A former employee, Michael Saul ("Mr. Saul") told Ms. Poremski that he received a yearly retention bonus with none of the requirements or caveats that Ms. Poremski was subjected to.

54.     Ms. Poremski believed she would be terminated because she had publicly participated in another lawsuit against RIDC alleging sex discrimination.

55.     Ms. Poremski was constructively discharged on March 15, 2022, when she was unable to endure the discrimination and fear of losing her position in retaliation for her prior participation in a sex discrimination lawsuit.

**COUNT I**
**SEX DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND THE PHRA**

56.     Ms. Poremski incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

57.     Under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. §2000e-2(a)(1).

58.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.,* 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green,* 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff,* 542 F.3d 205, 214 (3d Cir. 2008).

8

59.     The. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson* same legal standards apply to Title VII and PHRA claims *& Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

60.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA,* 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.,* 390 F.3d 760, 764 (3d Cir. 2004)).

61.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Morales v. Pnc Bank, N.A.,* 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

62.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

63.     A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.,* 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

64.     As a woman, Ms. Poremski is a member of a protected class under Title VII due to her sex.

65. Ms. Poremski is qualified for her position with RIDC as she has successfully completed the duties of her positions with RIDC since 1981.

66. Ms. Poremski suffered various aforementioned adverse employment actions in the form of discrimination, harassment, and disparate compensation.

67. Further, Ms. Poremski's male co-workers were not subjected to the same discrimination and adverse employment actions which she was subjected to.

68. RIDC's discrimination and disparate treatment of Ms. Poremski because of her sex were undertaken intentionally and with reckless indifference to Ms. Poremski's federally protected right to be free from discrimination in employment decisions based upon her sex.

69. As a direct and proximate result of the aforementioned conduct, Ms. Poremski suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

70. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages is appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor, including back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

## COUNT II
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII AND THE PHRA

71.     Ms. Poremski incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

72.     The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC,* 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

73.     In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondeat superior liability." *Senador* at *25 (citing *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001)).

74.     The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez,* 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

75.     Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 22 (1993)).

11

76.     Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

77.     Ms. Poremski was subjected to harassment in that she was told throughout her employment that men were superior to women.

78.     Ms. Poremski was placed in a cubicle while male management each had their own office. She was not invited to meetings when all male managers and board members were.

79.     This harassment Ms. Poremski endured is directly related to her sex. Ms. Poremski reported this harassment Human Resources formally and informally on numerous occasions, yet nothing was ever done to remedy it.

80.     The detrimental effect experienced by Ms. Poremski was reasonable under the circumstances as she has suffered and continues to suffer this harassment on the basis of her sex.

81.     Ms. Poremski's superiors were agents and/or employees of RIDC, therefore were acting on behalf of, and under the authority of RIDC.

82.     As a direct and proximate result of the aforementioned conduct, Ms. Poremski suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, humiliation and severe inconvenience all in the past present and future.

83.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages is appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor, including back pay, front pay, any other compensatory and punitive

damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

## COUNT III
## RETALIATION IN VIOLATION
## OF TITLE VII AND THE PHRA

84.    Ms. Poremski incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

85.    In order for a plaintiff to establish a prima facie case of retaliation under Title VII, she must demonstrate "(1) that she engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action. *Moore v. Secretary U.S. Department of Homeland Security*, 718 Fed.Appx. 164, 167 (3d Cir. 2017) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

86.    In order to establish that an employee engaged in a protected activity, a plaintiff is required to inform the employer of "the particular type of discrimination at issue*." Middleton v. Deblasis*, 844 F. Supp. 2d 556, 569 (E.D. Pa. 2011) (*citing Sanchez v. SunGard Availability Servs*., LP, 362 Fed.Appx. 283, 288 (3rd Cir.2010); Barber v. CSX Distrib. Servs*.,* 68 F.3d 694, 702 (3dCir.1995)).

87.    Following the sex discrimination, she was subjected to forty years, she reported it, thereby opposing the discriminatory comments.

88. Ms. Poremski participated and cooperated within another lawsuit against RIDC, wherein the plaintiff alleged sex discrimination, retaliation and and disparate pay in violation of Title VII and the PHRA. The same constituted protected activity.

89. After her reports, Ms. Poremski was given a retention bonus with catches and caveats that no male employee had to agree to for their bonus.

90. Mss. Poremski reasonably believed that RIDC planned to terminate her position in the near future.

91. The temporal proximity of the protected activity of reporting her opposition to the discriminatory conduct, and the adverse employment action of her being given an agreement that required her to waive all of her rights.

92. As a direct and proximate result of the aforementioned conduct, Ms. Poremski suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, humiliation and severe inconvenience all in the past present and future.

93. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor, including back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs and reasonable attorney's fees.

14

## COUNT IV
## DISPARATE COMPENSATION IN VIOLATION
## OF THE EQUAL PAY ACT OF 1963

94.    Ms. Poremski incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

95.    The Equal Pay Act ("EPA") of 1963 29 U.S.C.A. § 206(d)(1) prohibits discrimination,

> "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

96.    According to the Court in *Wildi v. Alle-Kiski Med. Ctr.*, the EPA "prohibits even a small difference in pay between members of opposite sexes performing equal work." *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640 (W.D. Pa. 2009).

97.    Furthermore, "under the Equal Pay Act, upon a showing of a discriminatory pay rate for apparently identical work, burden of proof [falls] upon employer to prove its claim that it came within exception allowing a differential based on a factor other than sex." *Shultz v. Wheaton Glass Co.*, 421 F.2d 259 (3d Cir. 1970), *amended,* (3d Cir. Feb. 13, 1970)

98.    Ms. Poremski's highest bonus was $3,000 after working for RIDC for forty years.

99.    Male managers each receive anywhere from $10,000 to $25,000 for a bonus.

100.    Ms. Poremski's position requires equal skill to that of her similarly situated male counterparts.

101.    The effort and responsibility of Ms. Poremski and her similarly situated male counterparts is essentially identical.

102.    Even though Ms. Poremski's position and the position of her similarly situated male counterparts required equal work, skill, effort, and responsibility, Ms. Poremski's  bonus pay was significantly less than her similarly situated male counterparts' pay.

103.    As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Ms. Poremski respectfully requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Poremski requests this Court award her the difference between the bonuses actually received by Ms. Poremski and the bonuses paid to male managers for equal work within the meaning of the Equal Pay Act, liquidated damages in an amount equal to back wages due and owing; an award of prejudgment interest, an award of reasonable attorney fees and costs, and any and all such other additional relief as the Court finds to be just and equitable.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**


Date: October 26, 2022                    By:  _/s/ Joshua P. Ward_____
                                                Joshua P. Ward (Pa. I.D. No. 320347)

                                                J.P. Ward & Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206

                                                Counsel for Plaintiff

16